UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANGELA MASSIONS,<br><br>　　　　　　Plaintiff,<br><br>vs.<br>Branches Academy, LLC, Honey Tree Academy LLC, and Kimberly D. Fielding,<br><br>　　　　　　Defendants. | Case No. |

## COMPLAINT

### Parties

1.　　Angela Massions is a resident of Wichita, Sedgwick County, Kansas.

2.　　Defendants Branches Academy, LLC and Honey Tree Academy, LLC are Kansas corporations that do business in Kansas. They can be served by service on their registered agent Kimberly Fielding, 2548 N. Maize Court, Suite 108, Wichita, Kansas.

3.　　Honey Tree Academy and Branches Academy operate an elementary school, day care and preschool that care for children as young as 12 months. The schools are on the same campus and share the same management and ownership.

4.　　Honey Tree Academy is not licensed by a state agency responsible for Kansas's educational system or accredited by a nationally recognized accrediting organization for career schools. It is licensed by the KDHE as a childcare facility.

5.　　Defendant Kimberly D. Fielding is an individual that lives in Wichita Sedgwick County Kansas.

6.　　Plaintiff was employed by Defendants from August 3, 2015, to April 25, 2019. At the time she was terminated, her hourly rate was $14.23 an hour.

7. Defendant Fielding is an employer as that term is defined in the Fair Labor Standards Act and the Kansas Wage Payment Act. The corporate defendants are employers as that term is described in those acts.

8. Also, all three defendants comprise an "enterprise" as defined by 29 U.S.C. § 203(r)(1) because they perform related activities for a common business purpose and share the same management and ownership.

9. Fielding is the majority owner of the corporate defendants. She is the Director of the childcare center/school run by the corporate defendants. She made the wage payment and wage and hour decisions that applied to Plaintiff and other similarly situated employees employed by both Defendants. She was aware of the payment decisions made about Plaintiff's and other employees' wages.

10. Defendants regularly engage in commerce. They purchase goods from out of state and regularly purchase goods and handle products that have traveled in interstate commerce.

**Jurisdiction and Venue**

11. The court has subject matter jurisdiction under 28 U.S.C. § 1331. Venue is proper in Kansas, as all Defendants reside or are registered to do business in Kansas.

**Allegations unique to Plaintiff**

12. As the office assistant, Plaintiff was a nonexempt hourly employee.

13. In May 2018, Plaintiff asked to be paid for hours spent working in and out of the office on the school yearbook.

14. In August 2018, Defendants paid her part of the wages she had worked, but refused to pay her regular hourly rate and her overtime rate, instead claiming it was entitled to pay a

"project rate," which was a rate different than her regular hourly rate for this work. Defendants did not inform Plaintiff that they were going to pay her a "project rate" before she performed the work.

15. It is Plaintiff's understanding that Defendants have paid other similarly situated nonexempt employees a "project rate" for work done at the preschool or elementary school.

16. Plaintiff complained both verbally and in writing that she remained unpaid for this work. Just before her termination, she told Ms. Fielding that she had consulted an attorney, and the attorney told her that paying a "project rate" was not legal.

**Break policy**

17. Employees, including Plaintiff, were required to subtract a 30 minute break period from each day's time sheets.

18. In fact, Defendants did not have employees complete time sheets for 40 hours a week. They completed the sheets for them and always subtracted a 30 minute break period.

19. Despite the time always being subtracted, employees were not relieved of their duties during the break. They were required to "take their break" in their classrooms where they were supervising students—often while students were napping or having quiet time.

20. Even when employees were working because they were supervising or assisting students, Defendants still deducted a half hour from their pay for their "break." Defendants told employees NOT to fill out time sheets unless they worked before or after shift.

21. Because Plaintiff's and other employees' hours were inaccurate and 2.5 hours per week were not paid and were not allowed to be recorded, Plaintiff and other similarly situated employees were denied both straight time and overtime pay.

22. Also, childcare employees were required to be at their desks 5 minutes before children arrived, but they were not paid for this time. Instead, they were paid for 40 hours.

**Plaintiff's complaints about wage and hour issues and her retaliatory termination**

23. In addition to her complaints during a counseling session on April 18 and her request in her written response to her April 18 discipline about payment for the work she had performed on the yearbook, Plaintiff also had argued with Defendant Fielding and her payroll employee about the propriety of paying a "project rate."

24. Within the same time frame that she was terminated, Plaintiff overheard an office employee tell Ms. Fielding that Plaintiff had told her that she had gone to see a lawyer and that the lawyer had told her that paying hourly employees a "project rate" was inappropriate.

25. In addition, on April 19, 2019, another teacher told Plaintiff that very recently Defendant Fielding had asked that teacher, "Did you know Angie went to see a lawyer about her pay?" The teacher denied knowing that but reported to Plaintiff that Fielding had asked her about it.

26. On April 25, 2019, Defendants terminated Plaintiff's employment in retaliation for her protected activity of asserting her rights under the wage and hour laws.

27. During a hearing in which Defendants unsuccessfully contested Plaintiff's right to receive unemployment, Defendant Fielding admitted knowing that Plaintiff had visited a lawyer about her wage and hour issues just prior to her decision to fire Plaintiff.

**Count 1—Plaintiff's claim for violation of KWPA**

28. Plaintiff was entitled to wages for working on the yearbook in April and May 2018. Those wages were due on her next regular paycheck.

29. Plaintiff was paid a part of those wages in August 2018, which was months after they were originally due. Plaintiff is entitled to a statutory penalty and to interest for the failure to timely pay.

30.     Defendants still owe Plaintiff for unpaid wages for the yearbook, plus interest and statutory penalties.

31.     In addition, during weeks when she did not work more than 40 hours a week, Plaintiff was not paid her "straight time" hourly rate for hours she worked during breaks for which she was not relieved of her duties because she had to monitor classrooms or cover for the teachers or cover the office.

WHEREFORE Plaintiff prays for judgment against all Defendants for unpaid wages for the yearbook, plus interest and statutory penalties.

**Count 2—Plaintiff's state law claim against Defendants for retaliatory discharge for her claims for unpaid wages**

32.     Plaintiff complained to Defendants that she had not been paid her wages due. Failure to pay wages when due is a violation of the Kansas Wage Payment Act.

33.     The Kansas Wage Payment Act is important Kansas public policy.

34.     In retaliation for Plaintiff's complaints, Defendants fired Plaintiff, which violates Kansas public policy.

WHEREFORE, Plaintiff prays for judgment against Defendants for her lost wages, for equitable relief, for damages for emotional distress, for punitive damages and for all other such relief as the court deems just and equitable.

**Count 3—FLSA Collective action for OT and wages not paid for break time when Plaintiff and similarly situated employees were not relieved of their duties**

35.     Plaintiff brings Count 3 individually and on behalf of all individuals similarly situated, specifically "all non-exempt employees of Defendants from September 17, 2016, to the present who were not paid for their 30 minute breaks even though they were not relieved of their

duties during that time or who were required to report to work five minutes before their shift and were not paid for it." This group shall be called the "FLSA collective." Plaintiff was an office administrator who was not exempt.

36.     Plaintiff consents in writing to assert her claims for unpaid wages pursuant to 29 U.S.C. § 216(b). Her signed consent form is attached as Exhibit A to this complaint.

37.     Members of the FLSA collective are known to Defendants and are readily identifiable through Defendants' records. They include all employees, except those employed by the elementary school, who met the learned profession exemption. They include all teachers at the childcare facility because that facility is not licensed by the Kansas Department of Education and so is not a school.

38.     Plaintiff and those similarly situated and described above are victims of Defendants' widespread, systemic and consistent illegal policies that have violated their rights under the FLSA.

39.     Plaintiff and those similarly situated would benefit from a court-supervised notice of this lawsuit and the opportunity to join this lawsuit.

40.     Other employees, some of whom were day care providers and unlicensed preschool "teachers" and classroom aides and nonexempt employees in the elementary school, were also not exempt.

41.     Defendants intentionally did not keep accurate time records of the hours worked by employees because they insisted employees take an unpaid 30 minutes every day for "break" whether or not the employees were relieved of their duties. In fact, Defendants purposely did not have employees create time sheets. Defendants created time sheets on a blank form with employee's signatures.

42. Plaintiff and other similarly situated employees from September 18, 2016, to the present were not paid overtime or even their regular hourly wages because Defendants excluded 30 minutes per day of time when Plaintiff and similarly situated employees were working.

43. Defendants required Plaintiff and similarly situated workers to deduct 30 minutes each day for an unpaid break even when they were not relieved of their duties. Because of this, Plaintiff and similarly situated employees were not paid wages and overtime due.

44. Defendants required Plaintiff and similarly situated employees to report to work before classes began but did not allow them to record time until class started.

45. Defendants' failure to compensate Plaintiff and similarly situated employees violated the FLSA. Defendants failed to make, keep and preserve accurate records with respect to Plaintiff and other similarly situated employees sufficient to determine their hours worked and wages earned in violation of FLSA.

46. Defendants knew and/or showed reckless regard for the FLSA provisions for overtime wages. Defendants suffered or permitted Plaintiff and other similarly situated employees to work more than 40 hours a week.

**Count 4—Retaliation in violation of FLSA in Plaintiff's discipline and termination**

47. Plaintiff told Defendant Fielding that she had visited an attorney about her wage and hour issues just a few weeks before she was disciplined and then terminated.

48. When she mentioned going to an attorney, Plaintiff told Fielding that paying a "project rate" was illegal. Plaintiff asked to be paid what she was owed for working on the yearbook less than two weeks before her discharge. This was protected activity.

49. Defendant Fielding knew of Plaintiff's protected activity. Plaintiff mentioned to her and then Fielding asked another teacher just before Plaintiff was discharged whether that teacher knew that Plaintiff had visited a lawyer.

50. Plaintiff overheard Defendant Fielding and another employee discussing Plaintiff visiting a lawyer during the week before she was discharged.

51. Defendants retaliated against Plaintiff by disciplining her on April 18 for something that had happened months before and then by terminating her on April 25. Defendants took these adverse employment actions in retaliation for Plaintiff's engaging in protected activity as that is defined by the FLSA.

WHEREFORE, Plaintiff prays for judgment in her favor, back pay and front pay, liquidated damages, attorney's fees, and all other relief the court deems just and equitable.

/s/ Gaye B. Tibbets
Gaye B. Tibbets, #13240
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: tibbets@hitefanning.com
*Attorneys for Plaintiff*

# CONSENT TO JOINT COLLECTIVE ACTION
## Pursuant to the Fair Labor Standards Act
## 29 U.S.C. § 216(b)

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent and agree to pursue my Fair Labor Standards Act litigation against Branches Academy, LLC; Honey Tree Academy LLC and Kimberly Fielding, as joint employers, arising out of claims of unpaid overtime wages. As a Plaintiff in this action, I agree to be bound by any judgment of the Court or any settlement of this action.

3. During the past more than three years, while working as a non-exempt employee, an administrative assistant, there were occasions when I worked more than forty hours per week and was not paid an overtime wage.

4. I choose to be represented by Hite, Fanning & Honeyman, LLP for all purposes in this action and authorize them to take any steps necessary to pursue my claims, including filing a new lawsuit.

5. I understand that I may withdraw this consent at any time by notifying the above-listed attorneys in writing.

Date: Sept 20, 2019

Signature: *Angela M. Massions*

Print Name: Angela M. Massions

**EXHIBIT A**